[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-10307
Non-Argument Calendar

_____

D.C. Docket No. 1:12-cr-20551-KMM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EDWIN AGUILAR-IBARRA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(January 22, 2014)

Before CARNES, Chief Judge, HULL and FAY, Circuit Judges.

PER CURIAM:

Edwin Aguilar-Ibarra appeals his 87-month sentence, imposed after he

pleaded guilty to conspiracy to commit a Hobbs Act robbery and the commission

of a Hobbs Act robbery.  See 18 U.S.C. § 1951.  He challenges the district court's application of a two-level bodily injury enhancement under § 2B3.1(b)(3)(A) of the United States Sentencing Guidelines, contending that the court erred in concluding that his objection to the enhancement was both untimely and without merit.

I.

In the pre-dawn hours on January 15, 2012, four masked men, including Aguilar-Ibarra, entered a Florida warehouse brandishing replica semi-automatic pistols.  The intruders bound, gagged, and then forced a warehouse employee into a back office, where they assaulted him and secured him to a chair with duct tape.  One of the assailants then used a warehouse forklift to load over half a million dollars' worth of cellular phones into a truck that had been stolen from a nearby business.

Aguilar-Ibarra's presentence investigation report (PSR) calculated a total offense level of 27, which included a two-level increase under U.S.S.G. § 2B3.1(b)(3)(A) because a victim of the robbery had sustained bodily injury.  In support of that enhancement, the PSR indicated that the warehouse employee "was taken to the hospital for minor injuries" as a result of the assault.  Aguilar-Ibarra's total offense level, when coupled with his criminal history category of I, yielded a sentencing guideline range of 70 to 87 months imprisonment.  Aguilar-Ibarra did

not file any written objections to the PSR within the 14-day period prescribed by Federal Rule of Criminal Procedure 32(f)(1).

At sentencing, defense counsel objected to the bodily injury enhancement, asserting that she and the government had agreed that the enhancement should not apply because there was no evidence that the warehouse employee had sustained any bodily injuries, and because it had not been applied at the sentencing of Aguilar-Ibarra's co-conspirators.  The government's attorney, laboring under the mistaken impression that the two-level enhancement required proof of serious bodily injury, confirmed that "the victim did not sustain a serious bodily injury." The district court, after recounting the factual allegations in the PSR and emphasizing that the two-level enhancement did not require the presence of serious bodily injury, asked the parties whether they disputed the PSR's statement that the warehouse employee had sustained minor injuries and was taken to the hospital. The government initially responded that it had "no evidence that there were bodily injuries," but quickly clarified that it had no evidence of "the extent of those injuries" and that it did not dispute that the victim had suffered minor injuries. Defense counsel similarly stated that she was not disputing the factual allegations in the PSR, though she was unable to ascertain the nature of the victim's injuries.

The district court then questioned the probation officer about the source of the information included in the PSR.  The probation officer responded that the

3

government had provided that information and that he was "familiar with the related case" against Aguilar-Ibarra's co-conspirators because he "covered [their] sentencing hearing." The probation officer also clarified that the co-conspirators had indeed received the bodily injury enhancement at sentencing. Defense counsel conceded that she misunderstood what occurred at the co-conspirator's sentence hearing and stated that she had "nothing further" on the enhancement issue. The court then overruled Aguilar-Ibarra's objection as both "untimely" and "without merit." After adopting the PSR in full, the court sentenced Aguilar-Ibarra to a total term of 87 months imprisonment. When asked whether he had any objections to the court's factual findings and sentence, Aguilar-Ibarra replied, "No."

## II.

Aguilar-Ibarra contends that the district court erred in rejecting his objection to the bodily injury enhancement as untimely. He asserts that the time limit for filing objections to the PSR was inapplicable in this case because he and the government agreed that the enhancement should not apply, and, in any event, the court exercised its discretion to waive the timeliness requirement when it considered and ruled on the merits of his objection.

Rule 32(f)(1) of the Federal Rules of Criminal Procedure provides that "[w]ithin 14 days after receiving the [PSR], the parties must state in writing any objections, including objections to material information, sentencing guideline

4

ranges, and policy statements contained in or omitted from the report." Fed. R. Crim. P. 32(f)(1). After receiving any written objections from the parties, the probation officer "may meet with the parties to discuss the objections," "investigate further," and "revise the presentence report as appropriate." Fed. R. Crim. P. 32(f)(3). At least seven days before sentencing, the probation officer must submit the PSR to the court along with "an addendum containing any unresolved objections, the grounds for those objections, and the probation officer's comments on them." Fed. R. Crim. P. 32(g). For good cause shown, however, the district court may extend the 14-day deadline for filing objections to the PSR, see Fed. R. Crim. P. 32(b)(2), or "allow a party to make a new objection at any time before sentence is imposed," Fed. R. Crim. P. 32(i)(1)(D).

Aguilar-Ibarra did not comply with the 14-day deadline for objecting to the contents of the PSR, and there is no merit to his contention that the deadline was inapplicable because the parties agreed that the bodily injury enhancement should not apply. Aguilar-Ibarra takes the position that the procedures mandated by Rule 32(f) are simply designed to "resolve disputes between the parties" and that it is therefore unnecessary to submit written objections in advance of sentencing "to correct an undisputed error in the [PSR]."

Rule 32(f)(1), however, clearly provides that all objections to the PSR, whether or not they are shared by the parties, must be submitted in writing well in

5

advance of sentencing.  And the manifest purpose of Rule 32 as a whole, of which the procedures and deadlines mandated by subsection (f) are an integral part, is not simply to resolve disputes between the parties; it is to ensure that the district court can meaningfully exercise its sentencing authority based on a complete and accurate account of all relevant information.  See Fed. R. Crim. P. 32(c)–(f) (mandating the preparation and submission of a PSR in advance of sentencing so that a district court can "meaningfully exercise its sentencing authority under 18 U.S.C. § 3553"); Fed. R. Crim. P. 32 advisory committee notes (1975) (explaining that because "presentence reports are important aids in sentencing," it is "essential that the presentence report be completely accurate in every material respect").  The deadlines imposed by subsection (f) are meant to facilitate this process by ensuring that the probation officer has an adequate opportunity to investigate and resolve any potential inaccuracies in the PSR, regardless of whether those inaccuracies are perceived by one or both parties.  See Fed. R. Crim. P. 32 advisory committee notes (1994).  Aguilar-Ibarra's position not only runs counter to the clear import of Rule 32(f)(1), but also ignores two fundamental, intertwined tenets of sentencing law — that a district court has an independent obligation to "calculate correctly the sentencing range prescribed by the Guidelines," United States v. Gibson, 434 F.3d 1234, 1243 (11th Cir. 2006) (quotation marks omitted), and that it is therefore "not

6

bound by the parties' agreements or recommendations" at sentencing, United States v. Johnson, 132 F.3d 628, 630 (11th Cir. 1998).

Although it is certainly true that the district court had the discretion to waive the timeliness requirement for good cause, Aguilar-Ibarra did not show cause for failing to timely raise his objection to the bodily injury enhancement, and the district court did not exercise its discretion to waive the timeliness requirement. The court expressly overruled Aguilar-Ibarra's objection as untimely, and although it alternatively addressed the merits of that objection, the court "never indicated that it would excuse the [timeliness requirement] and decide the [] issue solely on the merits." See United States v. Milian-Rodriguez, 828 F.2d 679, 683 (11th Cir. 1987) (district court's decision to deny a suppression motion both on timeliness grounds and on the merits did not excuse the untimeliness of the motion where the district court "never indicated that it would excuse the waiver and decide the [] issue solely on the merits"). The district court did not err in overruling Aguilar-Ibarra's objection to the § 2B3.1(b)(3)(A) enhancement as untimely. For that reason, we treat the matter as if no objection had been made.

## II.

Aguilar-Ibarra argues that the district court erred in applying the § 2B3.1(b)(3)(A) enhancement because there was no evidence that the robbery victim sustained any bodily injury, and the government purportedly conceded the

absence of such evidence at sentencing.  He also argues that even if the district court could rely solely on the factual allegations contained in the PSR, those allegations do not support a finding of bodily injury, as defined by the guidelines, because the PSR did not describe the precise nature of the victim's injuries or specify that they were of a type that ordinarily would require medical attention.

As we have discussed, because Aguilar-Ibarra did not file a timely objection to the bodily injury enhancement, and because the district court did not waive the applicable time limit for good cause shown, we review the present claim for plain error only.  See United States v. Parrish, 427 F.3d 1345, 1346 (11th Cir. 2005) ("[W]e review for plain error those issues to which the defendant did not make timely objections in the district court.").  Under plain error review, Aguilar-Ibarra bears the "burden of establishing that (1) there is an error; (2) that is plain or obvious; (3) affecting his substantial rights in that it was prejudicial and not harmless; and (4) that seriously affects the fairness, integrity, or public reputation of the judicial proceedings."  United States v. Beckles, 565 F.3d 832, 842 (11th Cir. 2009) (quotation marks and brackets omitted).  "Before an error is subject to correction under the plain error rule, it must be plain under controlling precedent or in view of the unequivocally clear words of a statute or rule."  United States v. Schmitz, 634 F.3d 1247, 1270–71 (11th Cir. 2011) (quotation marks omitted).

Section 2B3.1 of the sentencing guidelines, which governs robbery offenses, imposes varying degrees of enhancements if "any victim sustained bodily injury." U.S.S.G. § 2B3.1(b)(3).  The guidelines call for a two-level enhancement in the event of "[b]odily [i]njury," a four-level enhancement for "[s]erious [b]odily [i]njury," and a six-level enhancement for "[p]ermanent or [l]ife-[t]hreatening [b]odily [i]njury."  Id.  Bodily injured is defined by the guidelines as "any significant injury; e.g., an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought."  Id. § 1B1.1, comment. (n.1(B)).  When a defendant challenges one of the factual bases of his sentence, the government must prove the disputed fact by a preponderance of the evidence. United States v. Gupta, 572 F.3d 878, 887 (11th Cir. 2009).  A district court may, however, base its factual findings on undisputed statements in the PSR, because a defendant is deemed to have admitted any such statements that he has not objected to "with specificity and clarity."  Beckles, 565 F.3d at 843–44 (quotation marks omitted).  "Indeed, the defendant's failure to object to conclusory statements in the PSI renders those statements undisputed and permits the sentencing court to rely upon them without error even if there is an absence of supporting evidence."  Id. at 844.

Although Aguilar-Ibarra argued at sentencing that there was no evidence that the warehouse employee had sustained any bodily injuries, he did not dispute

the PSR's factual statements that the employee suffered minor injuries as result of being assaulted and was taken to the hospital for those injuries.  In fact, when the district court pointedly asked both parties whether they disputed that portion of the PSR, they affirmatively stated that they did not.  Because Aguilar-Ibarra did not specifically and clearly object to these factual statements contained in the PSR, he is deemed to have admitted them and the district court was entitled to rely on them even in the absence of supporting evidence.  See id. at 843–44.

And based on the undisputed facts in the PSR that the victim was assaulted by multiple masked men brandishing replica firearms and then transported to the hospital with minor injuries, the district court did not plainly err in concluding that the victim sustained a bodily injury within the meaning of the guidelines.  The court could have reasonably inferred from these undisputed facts that the victim's injuries were either "painful and obvious" or "of a type for which medical attention ordinarily would be sought."  See U.S.S.G. § 1B1.1, comment. (n.1(B)).  Aguilar-Ibarra has not cited any controlling precedent from this circuit or the Supreme Court holding otherwise, and the fact that the PSR did not specifically describe the nature of the "minor injuries" sustained by the victim does not render the district court's application of the § 2B3.1(b)(3)(A) enhancement plainly erroneous.  We therefore affirm Aguilar-Ibarra's sentence.

**AFFIRMED.**

10