**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 25-10349

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

WILLIAM ERVIN DANIELS,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:24-cr-00146-MMH-MCR-1

_____

Before ROSENBAUM, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

William Ervin Daniels appeals his sentence of 240 months' imprisonment for distributing child pornography. He argues that

the district court procedurally erred at sentencing by relying on unreliable and uncorroborated polygraph admissions, by applying a five-level pattern-of-sexual-activity enhancement under U.S.S.G. § 2G2.2(b)(5), and by allowing a non-victim to give a victim-impact statement. He also contends that his sentence of 240 months, the statutory maximum, was substantively unreasonable. After careful review, and for the reasons explained below, we affirm.

**I.**

In July 2024, a federal grand jury returned an indictment charging Daniels with distribution of child pornography in November 2023, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1). Daniels pled guilty before a magistrate judge, without a plea agreement, and the district court accepted his guilty plea without objection.

The facts of the offense are undisputed. In 2024, acting on several tips and leads that Daniels was distributing child pornography over the internet—one dating back to January 2014—agents with the Federal Bureau of Investigation ("FBI") obtained search warrants and searched his person, vehicle, and residence. Agents seized and searched Daniels's cell phone, which showed that he was logged into a Signal account that had distributed two videos depicting child pornography to a private group on Signal, "Da Litl Kidz Ge," in November 2023. Daniels was the administrator of the private group. A search of the phone also revealed at least 600 images of child pornography.

As relevant here, the presentence investigation report ("PSR") recommended a five-level enhancement for engaging in a

pattern of activity involving the sexual abuse or exploitation of a minor under U.S.S.G. § 2G2.2(b)(5).  The PSR reported that, after his arrest, Daniels took and failed a polygraph examination, and he admitted to sexually abusing his stepdaughter on two occasions when she was about 8 or 9 years old.  Daniels's total offense level was 39, his criminal-history category was I, and his resulting guideline range was 262 to 327 months of imprisonment.  The statutory maximum sentence was 20 years.  *See* 18 U.S.C. § 2252(b)(1).

Daniels objected to any reference to the polygraph or statements made before, during, and after the polygraph administered to him on July 11, 2024.  Daniels also maintained that the § 2B1.1(b)(5) enhancement did not apply because a "pattern" must be based on "relevant conduct" under the plain terms of § 2G2.2(b)(5), even if the commentary says otherwise.

At sentencing, both Daniels and the FBI polygrapher testified about the polygraph and related statements Daniels made.  Daniels denied touching any kids and told that to the polygrapher, but he was advised he failed the test.  After the polygraph, Daniels testified, he was given a document to sign "in case they needed [his] help in the future."  But he said he was not told it was a statement or that he was admitting to touching his stepdaughter, and he signed the document without reading it because he was nervous and scared.  He denied or did not remember signing other documents.  Daniels generally indicated that he had learning disabilities in reading and writing and had received special education throughout grade school.

The FBI polygrapher testified that, when he appeared for the polygraph on July 11, 2024, Daniels executed forms advising him of his rights and consenting to a polygraph interview, which the agent reviewed with Daniels out loud before he signed. The agent reminded Daniels he was not under arrest. During the polygraph, the agent asked Daniels whether he had engaged in sexual activity with a minor, which Daniels denied.

But in response to follow-up questions about other sexual activity, broadly defined, Daniels admitted to taking video of his stepdaughter in her room because he was "curious about her pre-puberty development and pubic hair growth." Pressed further, Daniels eventually admitted to having physical sexual contact with his stepdaughter on two occasions when she was 8 or 9 years old. The agent then wrote up a statement reflecting that admission in a "back and forth" process with Daniels, who reviewed and confirmed what the agent had written, or made corrections. When reviewing the statement, according to the agent, Daniels expressly confirmed that he had touched his stepdaughter's vagina "at least twice," and he went over the statement in full before signing it.

The district court overruled Daniels's objection to the § 2G2.2(b)(5) pattern enhancement. The court found nothing in Daniels's testimony to suggest that his statements were "coerced or involuntary," and the court otherwise found his testimony not credible. The court noted that Daniels did not "specifically deny telling the polygrapher" that he had ever touched a minor, and that

his testimony was "selective," internally inconsistent, and inconsistent with the government's exhibits. The court chose to credit the FBI polygrapher's "unequivocal" and detailed testimony about the polygraph and the voluntary creation of the written statement. Accordingly, the court found that the government had offered adequate proof for the PSR's statements regarding the polygraph.

As for Daniels's legal objection to § 2G2.2(b)(5), the district court was persuaded by the government's argument that the pattern enhancement was not limited to relevant conduct under the guideline's plain language. In any case, the court reasoned that, even if the "five-level enhancement did not apply, the [c]ourt would consider the conduct as aggravating conduct, and will consider it in terms of the [c]ourt's determination of an appropriate sentence."

The government argued for a sentence of 240 months' imprisonment, the statutory maximum, emphasizing the seriousness of the offense, Daniels's lengthy history of seeking out and engaging with child pornography, and the admissions regarding his stepdaughter, which showed he had "acted on his sexual interests in children." As part of its presentation, the government called Daniels's stepdaughter to read a written statement. Daniels objected to the statement in its entirety because she was not a victim of the offense, though defense counsel acknowledged that some details might be relevant to assessing Daniels's history and characteristics.

Daniels requested a sentence of 120 months, arguing that the offense level drastically overstated his culpability for the offense conduct.

The district court sentenced Daniels to the statutory maximum of 240 months. In pronouncing its sentence, the court explained that it had considered the 18 U.S.C. § 3553(a) factors, including the advisory guideline ranges both with and without the § 2G2.2(b)(5) pattern enhancement, given Daniels's non-frivolous objection. In particular, the court probed whether it "would arrive at a different sentence if the particular enhancement did not apply." "[A]fter considering the specifics of this case," the court was "convinced that it would not result in a different sentence."

The district court explained its view that the guideline range failed to account for certain aggravating factors of Daniels's "particular offense conduct," including (1) the "length of time the evidence shows that the defendant was engaged in the active and prolific distribution of child sexual abuse material"; and (2) "the fact that his role as an administrator facilitated the distribution of child sex abuse material by others." The court found that, even if the guideline range of 151 to 188 months applied, an upward variance to 240 months would be warranted to account for these aggravating factors. An upward variance was further warranted, in the court's view, to account for the admitted prior sexual contact with, and attempt to create video of, a minor, "[e]ven setting aside the additional specifics elaborated on" by Daniels's stepdaughter. The court made clear that the statements by the polygrapher and by

Daniels "alone would warrant" the court's determination that a 240-month sentence was necessary in this case, even if the pattern enhancement did not apply. Daniels objected on procedural and substantive grounds, and he now appeals.

## II.

In reviewing a sentence, we first make sure that no significant procedural error occurred, and then we determine whether the sentence was substantively reasonable under the totality of the circumstances. *See Gall v. United States*, 552 U.S. 38, 51 (2007).

### A.

Significant procedural errors can include relying on clearly erroneous facts or failing to properly calculate the guideline range. *Id.* When we review for procedural error, we consider a "district court's interpretation of a sentencing guideline provision or term *de novo.*" *United States v. Dougherty*, 754 F.3d 1353, 1358 (11th Cir. 2014). We review the court's factual findings for clear error. *United States v. Wilson*, 979 F.3d 889, 916 n.16 (11th Cir. 2020). To be clearly erroneous, the court's finding must leave us with a "definite and firm conviction that a mistake has been committed." *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010) (quotation marks omitted).

"When a defendant challenges one of the factual bases of his sentence, the government must prove the disputed fact by a preponderance of the evidence." *United States v. Aguilar-Ibarra*, 740 F.3d 587, 592 (11th Cir. 2014). The district court may base its findings on undisputed statements in the PSR and testimony presented

at the sentencing hearing, among other evidence. *United States v. Evans*, 958 F.3d 1102, 1109 (11th Cir. 2020).

The district court has discretion to consider relevant information at sentencing "without regard to its admissibility under the rules of evidence applicable at trial." U.S.S.G. § 6A1.3(a). Still, the evidence must have "sufficient indicia of reliability to support its probable accuracy." *Id.*; *see United States v. Ghertler*, 605 F.3d 1256, 1269 (11th Cir. 2010).

Here, Daniels has not shown that the district court clearly erred in finding that he admitted to sexually abusing his then-minor stepdaughter. The court heard testimony from both Daniels and the FBI polygrapher regarding the circumstances of the polygraph and the creation of the signed statement in which Daniels admitted to the sexual abuse of his minor stepdaughter. The court clearly explained its reasons for crediting the testimony of the FBI polygrapher and for discrediting Daniels's testimony, and those credibility determinations are entitled to "substantial deference." *United States v. Plasencia*, 886 F.3d 1336, 1343 (11th Cir. 2018) (quotation marks omitted). Daniels offers no persuasive reason to question the court's findings on these matters.

Although Daniels contends that his confession was "uncorroborated" and "unreliable," he has not shown that the district court clearly made a mistake by considering the admitted conduct at sentencing. As the government notes, the admitted conduct was consistent with his relevant offense conduct, which showed an interest in child pornography dating back to 2014. Moreover, since

Daniels elected to testify and to deny the conduct at issue, he took the risk that the district court as factfinder would disbelieve him and infer that the "opposite of his testimony is true." *United States v. Williams*, 390 F.3d 1319, 1325 (11th Cir. 2004) (quotation marks omitted). Accordingly, it was plausible for the court to infer that Daniels's statements to the polygrapher were sufficiently reliable for sentencing. *See Ghertler*, 605 F.3d at 1269. The district court did not clearly err on this point.

We conclude that the other procedural errors raised by Daniels are harmless. First, Daniels maintains that the district court erred in interpreting and applying the pattern enhancement under § 2G2.2(b)(5). But where the district court states that, based on its consideration of § 3553(a) factors, it would have imposed the same sentence regardless of any guideline-calculation error, the error is harmless if the sentence would be reasonable even if the district court's guideline calculation was erroneous. *United States v. Keene*, 470 F.3d 1347, 1348–49 (11th Cir. 2006). That's what happened here. The district court expressly stated, and explained at some length after the parties had made their arguments, that it would have imposed the same sentence of 240 months even if the pattern enhancement did not apply and the guideline range was instead 151 to 188 months. We conclude that the sentence was reasonable even if Daniels is correct that the § 2G2.2(b)(5) does not apply. So we don't consider whether the district court correctly applied the pattern enhancement, as any error would be harmless under *Keene*, in any case.

Second, Daniels contends that the district court erred by allowing his stepdaughter to address the court as a "victim" because she was not harmed as a result of his federal offense. But even assuming without deciding that the district court so erred, "a district court's consideration of an impermissible factor at sentencing is harmless if the record as a whole shows the error did not substantially affect the district court's selection of the sentence imposed." *United States v. Curtin*, 78 F.4th 1299, 1313 (11th Cir. 2023) (brackets and quotation marks omitted). And the court expressly stated that the stepdaughter's statement did not affect its choice of sentence, and that the statements from Daniels and the FBI polygrapher alone supported the alternative upward variance—in conjunction with the other "aggravating factors" identified by the court relating to the length of his offense conduct and his role as an administrator who facilitated the distribution of child-sex-abuse material by others. Because the record provides no reason to believe that the stepdaughter's statement affected the sentence, we conclude that any error in allowing the stepdaughter to present the statement in full was harmless. *See id.*

## B.

As to substantive reasonableness, the party challenging the sentence bears the burden of establishing that it is unreasonable based on the record and the § 3553(a) factors. *United States v. Shabazz*, 887 F.3d 1204, 1224 (11th Cir. 2018). Whether the sentence imposed is within or outside the guideline range, we review all sentences "only for reasonableness under an abuse of discretion

standard." *United States v. Olson*, 127 F.4th 1266, 1273 (11th Cir. 2025).

The district court has considerable discretion to impose a sentence sufficient but not greater than necessary to comply with the purposes of sentencing. *See* 18 U.S.C. § 3553(a). The court abuses its discretion if it "(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (*en banc*) (quotation marks omitted). But the district court does not have to give all the factors equal weight. *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015). And the mere fact that the court does not discuss mitigating factors cited by the defendant does not necessarily show that the court "erroneously ignored or failed to consider this evidence." *United States v. Amedeo*, 487 F.3d 823, 833 (11th Cir. 2007) (quotation marks omitted).

When a district court upwardly varies from the guideline range, it "must have a justification compelling enough to support the degree of the variance and complete enough to allow meaningful appellate review." *United States v. Early*, 686 F.3d 1219, 1221 (11th Cir. 2012). Whether the sentence is inside or outside the range, however, "we will vacate such a sentence only if we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable

sentences dictated by the facts of the case." *Id.* (quotation marks omitted).

Here, Daniels's sentence is substantively reasonable. The district court explained that, even if the pattern enhancement did not apply, the resulting guideline range of 151 to 188 months did not account for certain aggravating factors of the offense conduct, including his involvement with child pornography for nearly ten years, his role as an administrator of the Signal group, and his statements admitting to sexual abuse of his stepdaughter. Daniels argues that the district court did not place sufficient weight on his mitigating factors such as his learning disabilities, his acceptance of responsibility, and his belief that the lower guideline range still overstates the severity of his offense. But the court acknowledged Daniels's mitigating factors but found that these factors did not sufficiently set him apart from other defendants.

The court acted within its discretion to place more weight on other § 3553(a) factors, specifically the need to protect the public, to afford adequate deterrence for Daniels and others, and to account for the seriousness of his offense. *See Rosales-Bruno*, 789 F.3d at 1254. Because Daniels has not shown that his 240-month sentence was outside "the ballpark of permissible outcomes," we affirm. *Olson*, 127 F.4th at 1277 (quotation marks omitted).

**AFFIRMED.**